ILND 44 (Rev. 08/23)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

Jennifer Vege, Needra Ellison, Ariana Herrera

**DEFENDANTS**

HoneyJam Cafe, LLC

**(b)** County of Residence of First Listed Plaintiff DuPage
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant DuPage
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

**(c)** Attorneys *(firm name, address, and telephone number)*

Laura Luisi, Luisi Holz Law, 77 W. Wacker Dr., Suite 4

Attorneys *(If Known)*

Lewis Brisbois

## II. BASIS OF JURISDICTION *(Check one box, only.)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government not a party.)*
- ☐ 4 Diversity *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans)
- ☐ 153 Recovery of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### PROPERTY RIGHTS
- ☐ 820 Copyright
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729 (a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Arts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 445 Amer. w/ Disabilities- Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition)
- ☐ 465 Other Immigration Actions

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAXES
- ☐ 870 Taxes (U.S. Plaintiff or Defendant
- ☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Check one box, only.)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District (specify)
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

42 UC s. 2000e - Harassment, Retaliation, IIED

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:

☒ Check if this is a **class action** under Rule 23, F.R.CV.P.

Demand $

CHECK Yes only if demanded in complaint:
Jury Demand: ☒ Yes ☐ No

## IX. RELATED CASE(S) IF ANY *(See instructions):*

Judge

Case Number

## X. Is this a previously dismissed or remanded case?

☐ Yes ☒ No If yes, Case #

Name of Judge

Date: 1/6/2026

Signature of Attorney of Record Laura Luisi

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER VEGE, NEEDRA ELLISON,** and **ARIANA HERRERA,** individually and on behalf of all others similarly situated, | ) ) ) | Case No. |
| | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| **HONEY JAM CAFE, LLC; HONEY JAM CAFÉ II, LLC; CAROLINE BRANNAN;** and **JOSH BRANNAN,** | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Jennifer Vege, Needra Ellison, and Ariana Herrera, individually and on behalf of others similarly situated, by and through their undersigned counsel, for their Class Action Complaint against Honey Jam Café, LLC and Honey Jam Café II, LLC ("Honey Jam"), Caroline Brannan, and Josh Brannan for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* Illinois Human Rights Act, 775 ILCS 5/1 *et seq.*, Illinois Gender Violence Act, 740 ILCS 82/1 *et seq.*, and intentional infliction of emotional distress, based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by counsel and review of public documents, as to other matters, states as follows.

## NATURE OF THE ACTION

1.      This is a pattern-and-practice class action brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 for damages from sexual harassment and assault, stemming from persistent and continuous sexual and physical touching and intimidation by male colleagues, with the

assistance of Defendants, including forcing their bodies and thrusting their genitalia against women, cat-calling, using vulgar and sexual language constantly, and attempting to touch and rub their genitalia and breasts, all without consent, and after repeated complaints and pleas to stop.

2.      Plaintiffs and Class Members sustained these and other forms of ongoing assault and harassment while employed by Defendants at their Wheaton, Illinois location, with the knowledge of Defendants' local and regional management and owners.

3.      The consistent and ongoing conduct defined the workplace – no woman is safe from the well-established patterns and practices permeating Defendants' workplace.

4.      Defendants were made aware of these allegations by ongoing complaints to managers over a number of years, who, along with the family members and friends these managers supervise, behave as a gang by assaulting, harassing, intimidating, and terminating women who dare speak out.

5.      Defendants maintain a pattern and practice of learning of these types of allegations, ignoring them, and retaliating against the complaining women until they are fired or quit, thereby protecting the predators in question in each instance.  The conduct described herein was Defendants' standard operating procedure and its regular practices.

6.      Defendants' patterns and practices perpetuated a culture where assault and harassment occurred frequently without consequence and a system where employees were retaliated against for reporting and demanding that the behavior stop, including by cutting their sections, physical intimidation and threats, termination, and further harassment.

7.      Defendants are liable to Plaintiffs and other employees for the harm, including severe emotional distress, they caused in connection with their unlawful behavior.

2

8.     Plaintiffs, on behalf of themselves and a Class of similarly situated women, bring this lawsuit for damages, with costs and reasonable attorneys' fees.

## JURISDICTION

9.     The Court has federal question jurisdiction by way of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

10.     The Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

11.     The Court has personal jurisdiction over the corporate Defendants because they jointly operate and market Honey Jam Cafe in the State of Illinois. Defendants have been doing business in Illinois during all relevant times.

12.     The Court has personal jurisdiction over the individual Defendants because they own, operate, manage, and work at Honey Jam Café in Wheaton, Illinois.

13.     Directly and through their agents, Defendants have substantial contacts with the State of Illinois, have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from their activities in Illinois, including owning and operating over ten locations of the breakfast restaurant chain "Honey Jam Café."

14.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant Honey Jam is registered to do business in this District. Venue is also proper because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including marketing, advertising, offering, and providing food services in Illinois.

## PARTIES

15.     Plaintiff Jennifer Vege is a natural person, citizen of the State of Illinois, and resident of DuPage County.

16.     Plaintiff Needra Ellison is a natural person, citizen of the State of Illinois, and resident of DuPage County, Illinois.

17.     Plaintiff Ariana Herrera is a natural person, citizen of the State of Illinois, and resident of DeKalb County, Illinois.

18.     Defendant Honey Jam Cafe, LLC, is a limited liability company organized and existing under the laws of the State of Illinois.

19.     Defendant Honey Jam Café II, LLC, is a limited liability company organized and existing under the laws of the State of Illinois.

20.     Defendant Caroline Brannan ("C. Brannan") is a natural person and citizen of the State of Massachusetts.

21.     Defendant Josh Brannan ("J. Brannan" and together with C. Brannan, "Owners") is a natural person and citizen of the State of Massachusetts.

22.     Defendants jointly operate, manage, own, and/or maintain a chain restaurant called "Honey Jam Café," with at least ten locations in the Chicagoland area.

23.     Owners regularly conducted and controlled business for Honey Jame Cafe in the State of Illinois, both remotely and in-person.

## COMMON FACTS

### DEFENDANTS' HONEY JAM CAFÉ WHEATON

24.     Honey Jam café is a breakfast diner restaurant chain with over ten locations in the Chicagoland area.

25.     Plaintiffs and Class Members worked for Defendants at their Wheaton, Illinois location.

26. Despite maintaining an anti-nepotism policy prohibiting such hiring, Honey Jam employed various managers who supervised their family members, many of whom are the abusers and predators alleged herein.

27. During the relevant time, Honey Jam maintained 3-4 managers at its Wheaton location.

28. Two of those managers were a mother ("Alejandra") and a daughter ("Bernice").

29. Alejandra's husband, and Bernice's father, "Alvaro," was a server at Honey Jam Wheaton.

30. Alejandra's best friend, "Carmen," also worked as a server at Honey Jam Wheaton.

31. Carmen's husband, "Edgar," was also server at Honey Jam Wheaton.

32. Alejandra's cousin, "Fidel," also worked in the kitchen at Honey Jam Wheaton.

33. Alejandra's nephew, "Julian," also worked at Honey Jam as a server.

34. Alejandra and Bernice supervised their husband, father and cousin, in addition to their close family friends, who were as close as family members.

35. An unrelated individual, Jeff Young, was the regional manager.

36. At work, the aforementioned individuals intimidated, harassed, and retaliated against female employees as necessary to ensure that Fidel, Alvaro, Edgar, and other male employees could maintain their pattern and practice of sexually assaulting and harassing female employees without repercussion.

37. This group of people operated like a gang within Defendants' Wheaton restaurant.

### DEFENDANTS' POLICIES

38. Defendants maintain a robust set of policies intended to address the conduct complained of herein.

5

39.     While those policies exist, Defendants failed to adhere to them in each instance in which they would have prevented abuse and continued to ignore them despite many well-founded complaints.

40.     Defendants' sexual harassment policy states that Defendants "prohibit employees from engaging in sexual harassment of others on the job."

41.     The policy also states that employees should report any such harassment to their General Manager or Supervisor and that, once reported, an "objective and thorough investigation of the facts will be conducted."

42.     The policy goes on to state that employees should feel free to make such complaints "without fear of retaliation or revenge," claiming that no employee will be retaliated against "for reporting or cooperating in the investigation of alleged harassment or discrimination."

43.     Defendants also maintain a nepotism policy, which states that "qualified employees who are related by blood or marriage may both work for the Company, as long as their employment ***does not result in a supervisory relationship*** or ***create problems regarding safety, morale, security, or conflicts of interest***." (emphasis added).

44.     Defendants did not provide State and Federal notices or postings pertaining to the conduct alleged herein, including sexual harassment.

45.     Defendants did not require or provide sexual harassment or other relevant workplace training for employees or managers during the relevant time period.

46.     Defendants did not post or otherwise make available contact information for human resources, regional management, or another mechanism to report the conduct alleged herein.

### Defendants' Culture of Harassment and Abuse of Women

47.     Built into Defendants' culture is the protection of inappropriate, abusive, and illegal behavior to the detriment of women and refusal to enforce legal requirements and its own policies.

48.     The male workers, both kitchen workers and servers, felt emboldened to mistreat women employees because they were protected by Alejandra, Bernice, and Jeff, who refused to investigate complaints of sexual assault and harassment, lied regarding "making reports," insisted (without basis) that women could not make a complaint unless they made a legal statement in writing, and retaliated against those who chose to speak up.

49.     Defendants maintained a pattern and practice of abusing women, and then burying complaints of harassment and assault by failing to provide State-mandated notices and information to make complaints, refusing to investigate complaints made directly to management, not documenting those complaints, and terminating women who insisted on speaking out.

50.     Plaintiffs and Class Members regularly made complaints regarding male employees touching, making inappropriate and sexually vulgar comments, cat-calling, discussing inappropriate topics in the presence of women purposely to make them uncomfortable (including with respect to genitalia, sexual acts, and more), and assaulting them.

51.     These complaints were not investigated or taken seriously over a number of years, from at least 2021 through 2025.

52.     Instead, Honey Jam permitted a culture of vulgarity – the male employees frequently used inappropriate and harassing language, cat-called, placed their hands on female employees, and otherwise demeaned and disrespected female employees in daily interactions, without so much as a peep from management. This conduct defined the workplace, making it hostile and unbearable for women.

53.     In fact, this conduct was done with the assistance, acquiescence, and participation of management.

54.     The abuse was perpetuated by many male employees over a number of years, protected by Alejandra, Jeff, and Owners.

55.     The men in question violated Defendants' employees in the most intimate of ways – touching them all over their bodies and making inappropriate sexual comments, such as "Do you want to know what I would do to you right now," discussing the size of their genitalia, and describing lewd sexual acts.

56.     The men in question touch women on their waists, bottoms, breasts, and other private parts of her body when they walked by them or specifically sought them out in order to touch them.

57.     In some instances, the conduct escalated to physical abuse and sexual assault, such as attempting to touch genitalia while women are simply trying to do their jobs, including filling drinks at the beverage station, running food, carrying trays, and more.

58.     Because men were able to get away with this behavior, Honey Jam became a safe haven for abusive predators seeking restaurant work.

59.     Once a woman made a complaint, they were bullied and harassed by the men in question, in addition to Alejandra, Bernice, and others, by screaming, hurtling threats, refusing to seat their sections, and cutting their sections.

60.     In some instance, including as it relates to Plaintiff Vege, Alejandra and Carmen cornered women at the restaurant, screamed at them, and threatened them with physical harm if they did not leave or otherwise stop making complaints.

61.     If the men learned that certain women made complaints, they would intensify their behavior and become more physically aggressive in their conduct, in addition to increasing the vulgarity of the language they used around those women.

62.     Defendants' local and regional managers, along with their family members, operated a work-sanctioned gang, the goal of which was to permit male employees (family members and friends to the managers) to assault, harass, demean, belittle, and degrade women.

63.     Owners avoided these issues by living out of state and rarely showing up at the restaurant, engaging in the management of the business, enforcing policy compliance, or ensuring that employees and managers received appropriate notices and training.

64.     These complaints were not investigated when made.

## ALLEGATIONS SPECIFIC TO PLAINTIFF JENNIFER VEGE

65.     Plaintiff Vege began working for Honey Jam on October 19, 2021.

66.     Plaintiff Vege was subjected to unrelenting and inappropriate touching, harassment, physical intimidation, and more, in particular in the months leading up to her involuntary termination.

67.     Fidel and Alvaro looked at and treated Ms. Vege as if she was a piece of meat.

68.     Plaintiff Vege was frequently cat-called, touched against her wishes, and had vulgar statements made toward her.

69.     Fidel would regularly look for and find Plaintiff Vege throughout the restaurant so that he could grope and fondle her, touch her back and buttocks, graze her body with his hands as he walked by her, and press his body (specifically, his genitalia) up against her.

70.     These attacks were forceful, as Fidel was heavy handed about pushing himself up against Plaintiff Vege so that her efforts to push him away and stop the assault would not work.

71.     Fidel would also place his hand in Plaintiff Vege's front center apron pouch, which sits right in front of her genitalia, so that he could force his hand onto her genitalia.

72.     Fidel did this openly in the restaurant, in the presence of employees, managers, and cameras, and to the public humiliation of Plaintiff Vege.

73.     While Plaintiff Vege did her best to avoid him, he stalked her like prey and congregated around areas she would be forced to use, such as the beverage station and cooler.

74.     Plaintiff Vege reported the behavior to Alejandra in 2021, 2022, 2023 and, most recently in September through December 2024.

75.     Alejandra refused to address Plaintiff Vege's complaints in any manner, claiming that Plaintiff Vege was a liar, no one would believe her, and that she brought it upon herself by getting plastic surgery.

76.     As a result, Fidel's and Alvaro's behavior continued, to the point that Plaintiff Vege feared going to work and began exhibiting severe mental and emotional distress.

77.     Fidel was relentless, following Plaintiff Vege into the walk-in cooler nearly every time she went in there throughout her shift to obtain routine items, such as lemons for drinks or another refrigerated item.

78.     In one instance, Fidel followed Plaintiff Vege into the cooler, walked toward her, pushed his body up against her, fondled her, and tried to touch her private parts. She did her best to push him off, grab what she needed, and get out of the cooler.

79.     On November 16, 2024, Plaintiff Vege again reported this behavior to Alejandra, who claimed again, without investigating, that it did not happen.

80.     Plaintiff Vege requested contact information for Jeff, human resources, or any member of management other than Alejandra.

81.    Alejandra refused to provide the information and there was no such contact information available at the restaurant.

82.    On November 23, 2024, Plaintiff Vege again reported Alvaro's and Fidel's harassment and constant efforts to touch her (including her genitalia) to Alejandra and Bernice, both of whom blamed Plaintiff Vege and refused to do anything further.

83.    Alejandra shared with Alvaro that Plaintiff Vege made a complaint, causing Alvaro to become aggressive toward Plaintiff Vege and, among other things, telling her to "fuck off" in front of staff and patrons, including on December 7, 2024.

84.    Defendants retaliated against Ms. Vege for making these complaints and reporting assault and harassment.

85.    Thereafter, Alejandra began cutting Plaintiff Vege's section, until she only had 1-2 tables in her section, compared to the 6-8 Plaintiff Vege and other servers typically have in their sections.

86.    Alejandra repeatedly informed the hostess to skip Plaintiff Vege in the rotation or to not seat her at all.

87.    Plaintiff Vege began leaving her shifts with a fraction of her typical wages and tips.

88.    Plaintiff Vege finally tracked down Jeff's direct contact information and informed Jeff on December 21, 2024 of the ongoing abuse.

89.    In response, Jeff laughed it off and said they would not take that conduct seriously unless there was documented proof.

90.    Jeff left for the day without speaking with Fidel or Alvaro, or putting any parameters in place to keep Plaintiff Vege safe, at least while he investigated her allegations.

91.     Jeff's attitude toward the abuse was similar to Alejandra's – he claimed that Ms. Vege "looks more like a Hooters girl than a Honey Jams girl" and should expect this treatment.

92.     A few hours later, Fidel cornered Plaintiff Vege in the cooler and assaulted her again. Fidel approached Plaintiff Vege with a more aggressive demeanor, likely because he knew, from Alejandra, that he had been reported.

93.     Fidel forcefully stood with his back against the door laughing that Ms. Vege could not get out, and then walked toward Plaintiff Vege with apparent and open anger and aggression.

94.     Fidel put his hands on Plaintiff Vege's genitalia and began rubbing it, pushed himself up against her, and would not let up, despite Plaintiff Vege's best efforts.

95.     Plaintiff Vege eventually managed to wiggle away and ran out of the cooler. She reported this to Alejandra, who again refused to do anything about it.

96.     After her shift, Plaintiff Vege reached out to Jeff again, to demand that he do something about the abuse she disclosed.

97.     Again, Jeff claimed he would do nothing unless Ms. Vege gave him a written statement, which carried legal implications and was not mentioned in Defendants' policies.

98.     Nevertheless, Defendants were on notice following the many verbal and written complaints made regarding this conduct.

99.     The next day, on December 22, 2024, when Ms. Vege appeared at Honey Jam for her shift, Alejandra became enraged when she saw Ms. Vege, cornered her, screamed at her, called her a "whore," and told her to "get the fuck out."

100.     Ms. Vege understood this to be her termination.

101.     Ms. Vege continued making efforts to speak with Jeff, who made it very difficult to meet with him and did not show up when the parties eventually set a time.

102.     Ms. Vege also called Defendants' Wheaton location to speak with a manager, all of whom refused to come to the phone.

## **ALLEGATIONS SPECIFIC TO PLAINTIFF NEEDRA ELLISON**

103.     Plaintiff Ellison began working for Defendants in approximately November 2022 and remains an employee as of the filing of this Complaint.

104.     Plaintiff Ellison experienced much of the same conduct experienced by Plaintiff Vege, including unrelenting and inappropriate touching, harassment, physical intimidation, retaliation, and more.

105.     Plaintiff Ellison was groped by Alvaro all over her body on a regular basis, beginning as soon as she was hired, in 2022. She always told him to stop.

106.     He also constantly found her throughout the restaurant to whisper inappropriate sexual comments into her ear, such as what he "would do to her" and commentary on her body.

107.     In early 2023, soon after she started working at Honey Jam, Plaintiff Ellison reported this behavior to Bernice, not knowing that Alvaro was Bernice's father. Bernice refused to do anything regarding Plaintiff Ellison's complaints.

108.     Throughout the next two years, she also reported the behavior to Alejandra, who likewise refused to do anything.

109.     As recently as November 2025, Alvaro intensified his abuse by making made lewd comments to Plaintiff Ellison while at work, including that he envisioned her wearing a thong, liked her body, and wanted to take her on vacation so he could do nasty things to her.

110.     Plaintiff Ellison communicated that she was disgusted and walked away from Alvaro.

111.    Nevertheless, he said it to her again, in front of other employees, later that day, in an effort to humiliate her. Alejandra's nephew, Julian, reported this incident to Alejandra that day.

112.    As a result, Alejandra asked Plaintiff Ellison to meet her at the restaurant at 7:30 a.m. the next day, an hour and a half before Plaintiff Ellison's 9:00 a.m. shift start time.

113.    When Plaintiff Ellison arrived at the restaurant at 7:30 a.m., she was met by Bernice, Carmen, and Alvaro. Bernice insisted that they should talk about the incident that occurred day before with Alvaro sitting in the restaurant listening and staring at Plaintiff Ellison in a threatening and aggressive manner.

114.    Based on where Alvaro was seated, he could hear everything Bernice and Plaintiff Ellison were saying.

115.    Plaintiff Ellison felt intimidated and uncomfortable.

116.    Alejandra eventually showed up, but refused to investigate or do anything about the complaint, other than to change Plaintiff Ellison's schedule to avoid Alvaro.

117.    Thereafter, Plaintiff Ellison never worked at the same time as Alvaro unless Alejandra was present.

118.    This sudden and abrupt change to Plaintiff Ellison's schedule caused significant disruption to her life, including as it relates to childcare.

119.    Around the same time, Jeff began harassing Plaintiff Ellison for text messages and "dirt" on Plaintiff Vege, who had already filed her Charge in August 2025 and for which Defendants were in the process of preparing a mediation statement in regard to.

120.    Since the most recent complaint made against Alvaro, Carmen has begun harassing Plaintiff Ellison, hurling accusations and threats towards her, speaking poorly about her to the rest of the staff, and generally bullying Plaintiff Ellison.

14

## ALLEGATIONS SPECIFIC TO PLAINTIFF ARIANA HERRERA

121.    Plaintiff Herrera began working for Honey Jam as a server in August 2023.

122.    Plaintiff Herrera experienced much of the same conduct experienced by Plaintiff Vege, including unrelenting and inappropriate touching, harassment, physical intimidation, and more.

123.    Edgar and other males engaged in this conduct toward Plaintiff Herrera immediately upon her hiring.

124.    Edgar and these other males frequently spoke about the women employees and their bodies in a sexual and vulgar manner, openly and with the women around to hear it.

125.    Plaintiff Herrera was unable to walk through the kitchen without male kitchen staff staring at her in an aggressive and sexualized manner, looking intently at her breasts and attempting to get close to her.

126.    During her first week, while she had a tray in her hands and could not fend him off, Edgar took the opportunity to grope her buttocks aggressively, such that he ran his fingers down her buttocks and near her private parts, squeezing her buttocks hard in his hands.

127.    Plaintiff Herrera immediately reported this incident to Alejandra, who claimed she would talk to Edgar, but ultimately did nothing.

128.    Plaintiff Ellison witnessed Edgar assault Plaintiff Herrera and that Alejandra and Jeff did nothing to correct or curb Edgar's behavior at that time.

129.    As a result of Edgar and other male kitchen workers cat-calling, staring, and making comments about her breasts and other private parts, Plaintiff Herrera made the same complaint to Jeff.

130.    Rather than address the conduct in a meaningful way, such as with an investigation, Jeff simply told Plaintiff Herrera to stay away from Edgar.

131.    Nevertheless, thereafter, Carmen, Bernice, Alejandra, and Edgar began bullying and harassing Plaintiff Herrera because of her complaint, rendering working conditions unbearably tense, uncomfortable, and scary for Plaintiff Herrera.

132.    Alejandra refused to seat Plaintiff Herrera and others who complained in the proper rotation, instead giving more tables and all larger parties to Edgar and other predators.

133.    In one instance, Plaintiff Herrera, being new, asked a host where she could find a certain product. Edgar overheard and screamed at Plaintiff Herrera that she should figure it out on her own.

134.    Plaintiff Herrera again complained to Jeff, who did nothing.

135.    In another incident, Alejandra aggressively charged at Plaintiff Herrera for complying with a customer's request to hand them a syrup dispenser on the next table.

136.    As Plaintiff Herrera walked over to the kitchen to obtain a replacement syrup, Alejandra began screaming that syrups cannot be taken off tables and charged at Plaintiff Herrera like a linebacker.

137.    Plaintiff Herrera was so terrified at Alejandra's conduct, that she informed Alejandra she was leaving for the day.

138.    Jeff overheard and added "don't come back."

139.    Plaintiff Herrera understood Jeff's statement to be her termination.

## CORPORATE ALLEGATIONS

140.    There is such unity of interest and ownership between the corporate and individual Defendants that the separate personalities of the corporation and the owners who compose it no longer exist.

141.    Circumstances are such that adherence to the fiction of separate entities would promote injustice or inequitable circumstances.

142.    Honey Jam is inadequately capitalized, particularly in light of the conduct alleged and the negligent management and operation of this business.

143.    Defendants did not maintain employment practices liability insurance during the relevant time period.

144.    On information and belief, Defendants did not maintain any insurance during the relevant time period.

145.    The Owners did not in good faith put at risk of the business unencumbered capital reasonably adequate for the company's prospective liabilities. It is inequitable to allow Owners to set up a flimsy organization just to escape liability.

146.    On information and belief, Defendants distributed all excess revenue to Owners, thereby diverting assets to owners to the detriment of the business.

147.    The officers, directors, and/or Owners of the company are nonfunctioning, insofar as many of them maintain permanent residence out of state and infrequently maintain a physical presence or overview of the business operations. of officers and directors.

148.    Officers, directors, and/or Owners did not adequately supervise, manage, and operate the business insofar as they did not ensure proper training of managers and staff or required trainings by law, such as sexual harassment training.

149.    Officers, directors, and/or Owners did not adequately supervise, manage, and operate the business insofar as they rarely visited the restaurant.

150.    Officers, directors, and/or Owners did not adequately supervise, manage, and operate the business insofar as they did not invest in appropriate counseling, such as legal counseling, to ensure that they complied with employment and other legal obligations.

151.    Officers, directors, and/or Owners did not adequately supervise, manage, and operate the business insofar as they acted recklessly in their decision making and management of the business.

## CLASS ACTION ALLEGATIONS

152.    Plaintiffs bring their claims individually and on behalf of the following Classes pursuant to Rule 23:

**Wheaton Class.** All women employed by Honey Jam Cafe at its Wheaton, Illinois location within the limitations period.

**Complaining Sub-Class**. All women employed by Honey Jam Cafe at its Wheaton, Illinois location within the limitations period who complained about harassment, assault, or Defendants' pattern and practices regarding same.

**Battered Sub-Class**. All women employed by Honey Jam Cafe at its Wheaton, Illinois location within the limitations period who were physically assaulted, battered, or harmed by other employees.

153.    Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action and the members of their family; (4) persons who properly execute and file a timely request for exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defense counsel, and their experts and consultants.

154.     **Numerosity**. The proposed Class contains members so numerous that separate joinder of each Class Member is impracticable. Defendants operate a restaurant, which has high turnover and a large staff. On information and belief, the Class includes at least 50 members.

155.     **Commonality and Predominance**. There are questions of fact or law common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendants' managers and other employees harassed, bullied, and assaulted female employees;
- Whether Defendants and their managers refused to address complaints from female employees that they were being harassed, bullied, and assaulted;
- Whether Plaintiff and the Class were harmed as a result of Defendants' conduct; and
- What the appropriate damages are.

156.     **Typicality**. Plaintiffs claims are typical of the Class members' claims insofar as they are identical and Plaintiff has no circumstances antagonist to the Class.

157.     **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs understand the obligations inherent in representing a putative class, and the corresponding duties. Plaintiffs have retained counsel competent and experienced in complex and class action litigation.

158.     **Superiority**. A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Sexual Harassment in Violation of Title VII
### on behalf of Plaintiffs and the Classes

159.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

160.    Defendants are employers, as that term is defined in Section 2-101 of the Illinois Human Rights Act and Section 2000e of Title VII.

161.    Plaintiff and Class Members are employees, as that term is defined in Section 2-101 of the Illinois Human Rights Act and Section 2000e of Title VII.

162.    Defendants engaged in a pattern and practice of harassing, assaulting, and otherwise abusing women, failing to investigate or address and burying many well-founded complaints of sexual harassment over a number of years, with knowledge of local and regional management and Owners, and allowing predators to run rampant like a gang throughout their workplace.

163.    The conduct complained of herein was based on and because of Plaintiffs' and Class Members sex (female).

164.    Among other conduct, as mentioned herein, Defendants' managers and its managers' family members assault, harassed, demeaned, sexualized, and otherwise behaved inappropriately toward women employees.

165.    The work environment was both subjectively and objectively offensive, and severe and pervasive.

166.    Defendants created a restaurant-wide hostile work environment – women employees were not safe from the assault and harassment once they walked in those doors.

167.    Defendants' culture and hostile work environment was so severe and persistent and widespread that all women who worked for Defendants at their Wheaton location were subjected

20

to some form of harassment, whether that be inappropriate statements, language, cat-calling, or physical assault.

168.    Defendants learned of these allegations and many victims over a number of years, refused to investigate, and took active steps to permit these men to continue this behavior.

169.    All conduct complained of was unwelcome.

170.    Plaintiffs and other Class Members made complaints about employee and manager behavior for years prior to the filing of this action.

171.    Defendants received ongoing complaints regarding the allegations herein, including as recently as the last quarter of 2025.

172.    Defendants received complaints regarding harassment, assault, or other sexualized behavior by Fidel, Alvaro, Edgar, or other male employees after Plaintiff Herrera's separation.

173.    Defendants received complaints regarding Alejandra after Plaintiff Herrera's separation.

174.    Defendants received complaints regarding harassment, assault, or other sexualized behavior by Fidel, Alvaro, Edgar, or other male employees after Plaintiff Vege's separation.

175.    Defendants received complaints regarding Alejandra after Plaintiff Vege's separation.

176.    Defendants received complaints regarding harassment, assault, or other sexualized behavior by Fidel, Alvaro, Edgar, or other male employees after August 7, 2025, the date Plaintiff Vege filed her Charge.

177.    The aforementioned employee complaints are the same or substantially similar as the complaints received from Plaintiffs and Class Members.

178.    Defendants failed to investigate the complaints made regarding staff and managers at the time they were made, even when those reports were made directly to a manager or Owner.

179.    Defendants did not investigate Plaintiff Vege's complaints while she was employed or within the six months following her separation.

180.    Defendants did not investigate Plaintiff Ellison's complaints at the time she made them.

181.    Defendants never investigated Plaintiff Herrera's complaints.

182.    The wrongdoers in question were acting in furtherance of Defendants' interests at all relevant times.

183.    Defendants and its managers assisted all such acts by failing and refusing to enforce policies in place to prevent such behavior, participating in the behavior by retaliating, and creating the pathway for such abuse to continue.

184.    Defendants failed to supervise and train its staff and managers. Defendants failed to monitor its employees who engaged in sexual harassment or assault, in particular after multiple complaints.

185.    Management and Owners had knowledge of the wrongful conduct and did nothing meaningful to address the problem, including by maintaining the wrongdoers (Alejandra, Fidel, Alvaro, Bernice, Edgar, Jeff) as employees and taken specific actions to protect those individuals, such as terminating those who made complaints against them.

186.    Defendants' managers created a pattern, policy, and practice of ignoring these complaints, intimidating these women, diminishing their sections and shifts at work (including by telling hostesses to skip them in rotations), bullying them, and protecting the predators harassing women working for Defendants.

187.    These were conscious and active efforts by Defendants' local and regional managers and active participation in the conduct at issue.

188.    Owners gave these managers full reign over policy implementation and culture, rarely participating in day-to-day operations or oversight.

189.    Alejandra, Bernice, Jeff, and Owners created and maintained a culture where their husband, father, cousin and other friends and relatives were free to harass, sexually assault, and batter women without repercussions.

190.    By failing to exercise reasonable care or do anything to stop the wrongdoers, or at least ensure their policies were being enforced, Defendants ratified the conduct in question. Defendants' were aware of the conduct alleged herein at all relevant times.

191.    The actions of Defendants and its employees, including without limitation Fidel, Alvaro, Jeff, Edgar, and Alejandra, were a substantial factor in causing the injury. Without their conduct, the injuries would not have occurred.

192.    Plaintiffs and Class Members found the harassment in question offensive, pervasive, and severely emotionally damaging, in addition to Defendants' conduct pertaining to same.

193.    The complained conduct was insulting, embarrassing, sexually harassing, unwelcome, severe, and pervasive.

194.    The complained conduct would be offensive to any woman, rendered the work environment hostile, and rendered employment intolerable.

195.    The conduct is both subjectively and objectively hostile and impacted the terms, conditions, and privileges of employment.

196. The complained conduct was malicious, with reckless indifference, and intended to oppress, humiliate, and denigrate Plaintiff and Class Members.

197. Defendants did not exercise reasonable care to prevent and promptly correct the conduct at issue.

198. Defendants knew or should have known about the harassment and failed to take reasonable steps to remedy. Defendants were negligent in their actions.

199. Plaintiffs and Class Members are entitled to compensatory, punitive, actual, and other damages, fees, costs, and other relief they are entitled to under the law.

200. Plaintiffs filed a Charge pertaining to this claim on August 7, 2025 and an amended Charge on September 22, 2025. *See* Ex. A.

201. Plaintiffs received a right to sue letter from the Illinois Department of Human Rights on October 8, 2025. *See* Ex. B.

202. Plaintiffs received a right to sue letter from the Equal Employment Opportunity Commission on January 5, 2026. *See* Ex. C.

203. Plaintiffs exhausted all administrative remedies applicable.

## COUNT II
### Sexual Harassment in Violation of the Illinois Human Rights Act
### on behalf of Plaintiffs and the Classes

204. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

205. Defendants are strictly liable for the conduct alleged herein.

206. Plaintiff and the Class are entitled to, and seek, actual damages, punitive damages, reasonable attorneys' fees and costs, and any and all other equitable relief that the Court deems appropriate.

207.     Plaintiffs filed a Charge pertaining to this claim on August 7, 2025 and an amended Charge on September 22, 2025. *See* Ex. A.

208.     Plaintiffs received a right to sue letter from the Illinois Department of Human Rights on October 8, 2025. *See* Ex. B.

209.     Plaintiffs received a right to sue letter from the Equal Employment Opportunity Commission on January 5, 2026. *See* Ex. C.

<u>**COUNT III**</u>
**Violation of the Illinois Gender Violence Act 740 ILCS 82/1 *et seq.***
**against Defendants on behalf of Plaintiff and the Classes**

210.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

211.     All conduct alleged herein giving rise to the claims alleged herein arises out of and in the court of employment for Defendants, insofar as all conduct occurred at the workplace and in connection with seeking to perform work for Defendants.

212.     All violence which was perpetrated against Plaintiffs and Class Members occurred while they were at work and attempting to perform their duties at work, such as serving tables and other tasks related thereto.

213.     Defendants acted in a manner inconsistent with how a reasonable person would act under similar circumstances, including by learning of these allegations and many victims over a number of years and refusing to investigate.

214.     All conduct complained of herein arose out of and in the course of employment for Defendants, in the middle of work shifts. At all relevant times, Plaintiffs and Class Members were performing work duties.

215.     Defendants and its managers and Owners had a pattern and practice where they condoned, encouraged, and perpetrated physical aggression amounting to battery, physical

intrusions and invasions of a sexual nature, and a threat of same against Plaintiffs and Class Members.

216.    Defendants and its managers assisted all such acts by failing and refusing to enforce policies in place to prevent such behavior, participating in the behavior by retaliating, and creating the pathway for such abuse to continue.

217.    These were conscious and active efforts by Defendants' local and regional managers and active participation in the conduct at issue.

218.    The gender-related violence described herein was the cause of Plaintiffs' and the Class Members' injuries.

219.    Plaintiffs and Class Members are entitled to compensatory, punitive, actual, and other damages, fees, costs, and other relief they are entitled to under the law.

220.    The actions of Defendants' employees, including without limitation Fidel, Alvaro, Jeff and Alejandra, were a substantial factor in causing the injury. Without their conduct, the injuries would not have occurred.

221.    The gender violence was the proximate cause of their injuries, including extreme emotional distress.

## COUNT IV
### Retaliation in Violation of Title VII and Illinois Human Rights Act against Defendants on behalf of Plaintiffs and the Classes

222.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

223.    Plaintiffs and Class Members reported harassment or other inappropriate behavior to Defendants.

224.    This conduct was based on and because of Plaintiffs' and Class Members sex (female).

26

225.    Soon after making such reports, Plaintiffs and Class Members had adverse employment actions taken against them, including termination, demotion through failure to schedule, cutting sections, or cutting shifts, demotion, pay cuts, and additional harassment and bullying.

226.    Soon after making such reports, Plaintiffs and Class Members were harassed, demeaned, and screamed at and retaliated against by Alejandra and Jeff.

227.    This retaliation occurred close in time (within days) to the reports made by Plaintiffs and Class Members, pertained to the Alejandra's family members and significant others, and, in some instances, Alejandra, Jeff and others specifically mentioned the reports or engaged in this behavior in the very meetings in which the reports were made.

228.    Plaintiffs and Class Members suffered actual, compensatory, punitive, and other damages as a result, in addition to fees, costs, and all other relief entitled Plaintiffs and Class Members are entitled to under the law.

## COUNT V
### Intentional Infliction of Emotional Distress
### against Defendants on behalf of Plaintiffs and the Classes

229.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

230.    Defendants' conduct was extreme and outrageous.

231.    Defendants commanded and authorized the intentional infliction of emotional distress by creating a pattern and practice of permitting predators to assault, batter, harass, demean, and offend women in the workplace, such conduct which occurred because Defendants did not adequately train its managers, including mandatory trainings, or supervise its workforce.

232.    Defendants intended to inflict severe emotional distress or at least knew that there was at least a high probability that their conduct would cause severe emotional distress, including

by permitting predators to harass and assault women employees, refusing to investigate, and taking harmful and retaliatory action against women for asking that this behavior stop.

233.    Defendants' conduct did, in fact, cause severe emotional distress.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as plead in the foregoing and judgment against Defendants:

a.    An Order certifying the Class, defining the Class as requested herein, appointing Plaintiffs as Class representatives, and appointing their counsel as Class counsel;

b.    An award of any actual, compensatory, and enhanced damages permitted to Plaintiffs and other Class Members, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c.    An award of punitive damages for Defendants' misconduct and deliberate indifference;

d.    An award of reasonable attorneys' fees, costs, and other litigation expenses;

e.    An award of pre- and post-judgment interest as available under law;

f.    The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct;

g.    An Order enjoining Defendants from continuing their unlawful conduct; and

h.    Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: January 6, 2026 Respectfully submitted,

**Plaintiffs, on behalf of themselves
and others similarly situated**


By: /s/ *Laura Luisi*
Laura Luisi
Luisi Holz Law
LuisiL@luisiholzlaw.com
77 W. Wacker Dr.
Chicago, Illinois 60601
Tel: (312) 639-4478

*Attorney for Plaintiffs and the
Putative Class*